Heinz Binder (SBN 87908)
Wendy Watrous Smith (SBN 133887)
David B. Rao (SBN 103147))
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
T: (408) 295-1700
F: (408) 295-1531
Email: heinz@bindermalter.com
Email: wendy@bindermalter.com
Email: david@bindermalter.com

Attorneys for Appellant South River Capital, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| In re: | Case No.   21-cv-03493-WHO |
|---|---|
| EVANDER F. KANE, | BK Case No.:  21-50028 SLJ |
| Debtor. | Chapter 7 |
| SOUTH RIVER CAPITAL, LLC, | |
| Appellant, | |
| v. | |
| EVANDER F. KANE, | |
| Appellee. | |

**APPELLANT'S REPLY BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. THE SUPREME COURT CASE OF *U.S. BANK N.A. V. VILLAGE AT LAKERIDGE, LLC* REQUIRES A *DE NOVO* REVIEW. ................................ 3

III. KANE'S SUGGESTION THAT THE BANKRUPTCY COURT HAS UNLIMITED DISCRETION TO CONSIDER ANY FACT OR CONCERN WHEN DECIDING WHETHER TO CONVERT A CASE UNDER SECTION 706(B) IS ENTIRELY UNSUPPORTED. ............................. 5

IV. KANE'S BRIEF CANNOT CURE THE FLAWED LEGAL PREMISES ON WHICH THE ORDER IS BASED. ................................................ 5

V. ASSESSING THE FEASIBILITY OF AN AS-YET UNPROPOSED PLAN IS PREMATURE WHEN DECIDING IF A CASE SHOULD BE CONVERTED TO ONE UNDER CHAPTER 11. ......................................................... 7

VI. KANE'S DISMISSAL OF THE BANKRUPTCY COURT'S INSISTENCE THAT THE MOVING PARTIES ESTABLISH "CERTAINTY" IN THE CONFIRMATION OF A PLAN AND A "GUARANTEED" RECOVERY DOES NOT REFLECT THE IMPACT OF THE COURT'S RULING. ................................................................................. 8

VII. THERE IS NO CONSTITUTIONAL ISSUE ON APPEAL. ....................... 8

VIII. CONCLUSION ................................................................................................ 9

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..... 10

**TABLE OF AUTHORITIES**                                                                                          **Page**

Cases

*In re Baker*, 503 B.R. 751 (Bankr. M.D. Fla. 2013)..................................................8, 9

*In re Gordon,* 465 B.R. 683 (Bankr. N.D. Ga 2012)..........................................4, 8, 9

*In re Schlehuber v. Nat'l Bank & Trust Co., (In re Schlehuber)* 489 B.R. 570
    (8th Cir. B.A.P. 2013) ................................................................................1, 4, 5

*In re Skagit Pac. Corp.*, 316 B.R. 330, 336 (9th Cir. B.A P. 2004)..............................6

*U.S. Bank N.A. v. The Village at Lakeridge, LLC*, 138 S. Ct., 960 (2018) .............3, 4

*United States v. Kras,* 409 US 434, 446 (1973) ...........................................................9

Statutes

11 U.S.C. §303....................................................................................................9

11 U.S.C. §362(i)................................................................................................6

11 U.S.C. §706(b)......................................................................................... Passim

11 U.S.C. §1141(d)(5) .......................................................................................6

I. INTRODUCTION.

Evander Kane's appellee brief ("Kane's Brief") presents a general objection to this appeal by South River Capital LLC ("South River") of the Bankruptcy Court's April 19, 2021, order, which denies several creditors' motions to convert Kane's Chapter 7 case to one under Chapter 11 pursuant to Bankruptcy Code Section 706(b) (the "Order"). [1] Kane's Brief recites largely undisputed facts and summarizes the arguments made in the Bankruptcy Court and the Order itself, only discussing the stated issues on appeal in the last few pages. The brief is notable for what it does not address as much as for what it does. On the factual side, Kane does not dispute that his own testimony shows that his annual take-home pay over the remaining term of his NHL contract is expected to be between $2.3 and $2.6 million, that he asserts annual expenses of $1.1 million for a family of three, and that he could fund a plan with $4 to $7 million over five years. (See discussion in South River Capital's opening brief (the "Appeal Brief"), p. 7.)

Kane's Brief also does not dispute that a bankruptcy court that considers whether to convert a case to Chapter 11 under Section 706(b) [2] must consider what would most inure to the benefit of all parties and interest, and "*would further the goals of the Bankruptcy Code*". *In re Schlehuber v. Nat'l Bank & Trust Co., (In re Schlehuber)* 489 B.R. 570, 573 (8th Cir. B.A.P. 2013) *(internal citations and quotes omitted, emphasis added.)* Finally, Kane's Brief does not dispute that a bankruptcy court's authority is limited to acting within the scope and purpose of the Bankruptcy Code. (Appeal Brief at pp. 14-18.)

What Kane does dispute, while obliquely, are primarily issues of law. These issues - whether the Bankruptcy Court's Order relied on incorrect legal theories and irrelevant factual concerns, and whether it heightened the burden of proof on the

---

[1] South River Capital Appeal Appendix ("SRC") 0460-0486.

[2] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code 11 USC §§101–1532.

moving parties - must be reviewed *de novo* by the court on appeal. (See discussion below.)  Kane seeks to avoid this closer scrutiny by consolidating the legal issues into a single general inquiry, stating: "the issues submitted by South River all boil down to whether the bankruptcy court abused its discretion in denying the motion." (Kane's Brief, p. 2, ll. 6-7.)

Kane's Brief then argues that the Bankruptcy Court can consider a "variety of factors" when it decides whether to convert a case under Section 706(b) and provides two different lists of possible issues - suggesting that the scope of consideration is virtually unlimited.  (Kane's Brief, p. 3; p. 10, ll. 19-20; p. 11, ll. 6-15.)  Kane's Brief only recognizes that the Order states concerns beyond the Bankruptcy Court's discretion - such as Kane's personal life decisions and career risks - when it argues that the Court's comments can be disregarded by this Court on appeal.  Kane asserts that the comments were only made by the Court in the "broader context" of the discussion. (Kane's Brief, p. 14, ll. 8-11.[3])  But these generalities cannot prevent proper scrutiny on appeal of the Bankruptcy Court's legal errors when it refused to convert the case.

The Bankruptcy Court erred first in considering factors that are unrelated to the bankruptcy process, specifically, Kane's desires to obtain a discharge without contributing wages toward the effort and to pay for non-exempt assets (particularly two multi-million dollar houses), and the special character of his sport. (Kane's Brief, pp. 19-23). Second, the Court erred in finding that there are legal impediments to Kane confirming a plan of reorganization, specifically, the claims that a security interest can attach to post-petition earnings, that a Chapter 11 plan cannot protect post-petition earnings from collection by non-discharged creditors, and that a Chapter

---

[3] Kane's Brief repeats its request that this Court ignore parts of the Order when suggesting that Kane is entitled to discharge without payment of his wages as being comments "placed in the mix by the court consistent with its consideration of numerous factors and its broad discretion to decide the Conversion Motion". (Kane's Brief, p. 20, ll. 3-5, 12-14)

11 would automatically prevent Kane from paying to defend nondischargeability litigation.  Finally, the Bankruptcy Court erred in increasing the burden on the moving parties, demanding they show a specific, significant recovery to creditors from a Chapter 11 plan, and guarantee that it be confirmed.  Any one of these errors creates problems with the Order, but the combination mandates that the Order be reversed and remanded with instructions.

## II. THE SUPREME COURT CASE OF *U.S. BANK N.A. V. VILLAGE AT LAKERIDGE, LLC* REQUIRES A *DE NOVO* REVIEW.

To support Kane's argument that this court should consider the Order only with the most general and generous standard of review, Kane presents a single supreme court case, *U.S. Bank N.A. v. The Village at Lakeridge, LLC*, 138 S. Ct., 960 (2018). The case, while setting forth useful guidelines for reviewing mixed questions of fact and law, sheds little light on the current matter.

In *U.S. Bank*, the court reviewed a lower court's determination that a party who offered to purchase certain corporate debtor's assets was a "non-statutory insider" such that the proposed transaction could be conducted at arm's length. *Id.* at p. 964.  The appellant argued that the proposed purchaser was an insider because of a romantic relationship with a member of the board of the corporate debtor. *Id.* at p. 964.  As noted in Kane's Brief, the Supreme Court examined the nature of the question as a "mixed question of fact and law." *Id.* at pp. 966-967.  This type of question requires reviewing: 1) whether the lower court applied the correct rule of law, which is reviewed *de novo*, 2) whether it determined the "relevant historical facts" correctly, which requires a review for clear error, and 3) whether the "historical facts found satisfy the legal test chosen".  *Id.* at pp. 965-966.

The Supreme Court notes that "[m]ixed questions are not all alike" and thus that not all mixed questions require the same review, stating: "When an issue falls somewhere between a pristine legal standard and a simple historical fact, the standard of review often reflects which judicial actor is better positioned to make the

decision." *Id.* at 967 (citation omitted).  It goes on:

> [s]ome require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard. When that is so – when applying law involves developing auxiliary legal principles of use in other cases - appellate courts should typically review the decision *de novo*.

*Id.* at 967 (citation omitted).  As noted by Kane, other questions immerse courts in specific factual issues – compelling them to "marshal and weigh evidence" and make credibility judgments.

Having set forth the application of a mixed question of law and fact as described in *U.S. Bank*, Kane's Brief then asserts that the questions before this court are more factual than legal, listing selected factors considered by the Bankruptcy Court below.  (Kane's Brief, p. 3, ll. 19-24.)  But Kane's list excludes any of the critical legal errors that are the mainstays of the Order and does not address whether the facts considered were relevant to the legal question being decided, as is required by the Supreme Court's decision in *U.S. Bank*, p. 965.

Here, the legal question whether the case should be converted requires the court to determine "what will most inure to the benefit of all parties in interest", by considering "anything relevant that would further the goals of the Bankruptcy Code." *In re Schlehuber v. Nat'l Bank, (In re Schlehuber)* 489 B.R. 570 at p. 573, citing *Proudfoot Consulting Co v. Gordon* (*In re Gordon*) 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012).  While the test is broad, it is still limited by the restrictions of the Bankruptcy Code.  In the case on appeal here, the Bankruptcy Court's consideration of issues as far afield as Kane's concern for his family and hockey career and desire to retain non-exempt assets calls for this Court to "develop…legal principles" both to give guidance to the Bankruptcy Court on remand and for use in other cases.  This exercise requires review of the decision *de novo*. *U.S. Bank N.A. v. The Village at Lakeridge, LLC*, 138 S. Ct. at p. 966.

Whether or not this court deems the overall question of whether to convert this

case to one under Chapter 11 as requiring review *de novo*, there is no question that the Bankruptcy Court's assessment of the specific legal impediments to Kane confirming a plan of re-organization and the burden of proof imposed upon the movants require a *de novo* review.

### III. KANE'S SUGGESTION THAT THE BANKRUPTCY COURT HAS UNLIMITED DISCRETION TO CONSIDER ANY FACT OR CONCERN WHEN DECIDING WHETHER TO CONVERT A CASE UNDER SECTION 706(B) IS ENTIRELY UNSUPPORTED.

Kane's Brief argues for as great discretion as possible for the Bankruptcy Court's decision under Section 706 (b) and asserts that the Bankruptcy Court need only consider "what will benefit all parties" with no other limitation. (Kane's Brief, p. 10.) The brief is silent on the strict jurisdictional limits of the Bankruptcy Court and the prohibition of the Bankruptcy Court's discretion to "expand a debtor's rights under the guise of 'a fresh start'" (Appeal Brief, pp. 14-18.) Kane's Brief makes little effort to argue that the Order falls within these narrow restrictions.

Kane does not attempt to justify the court's consideration of Kane's desire to retain exempt assets, discharge his debts without paying his wages, support his extended family, and to have the peculiarities of his career considered. Rather, the brief generalizes it as "part of the mix of the court's consideration of numerous factors and its broad discretion to decide the conversion motion." (Kane's Brief, p. 8; p. 20, ll. 9-25; p. 14, ll. 9-11.) Kane's Brief implies that the Court on appeal can simply choose to ignore sections of the Order that reflect considering factors beyond those that would "further the goals of the Bankruptcy Code." *Schlehuber* at p. 573. Kane gives no suggestion or guidance to the court of when such non-bankruptcy considerations should become noticeable to a reviewing court.

### IV. KANE'S BRIEF CANNOT CURE THE FLAWED LEGAL PREMISES ON WHICH THE ORDER IS BASED.

The Order is based largely on three incorrect theories for its conclusion that

Kane's case should not be converted. These are: 1) that some claims are secured by an interest in Kane's post-petition wages – an assertion the very same Court rejected two months later in a summary judgment;[4] 2) that a Chapter 11 plan could not prevent a holder of non-discharged claims from levying against Kane's post-petition wages; and 3) that a Chapter 11 plan would prevent Kane from using post-petition wages to defend against discharge litigation. As argued in the Appeal Brief, each of these theories is incorrect. Once the purported legal impediments to Kane confirming a Chapter 11 plan are disregarded, the remainder of the Order relies on the non-bankruptcy considerations discussed above and the Order collapses.

First, as discussed in the Appeal Brief and the Bankruptcy Court Summary Judgment Order, the Ninth Circuit Bankruptcy Appellate Panel has ruled that a pre-petition lien does not attach to post-petition wages. *In re Skagit Pac. Corp.*, 316 B.R. 330, 336 (9th Cir. B.A P. 2004). *See also,* Appellate Brief, p. 32. The Order references the *Skagit* opinion but then rules as if it did not control. Neither the Order nor Kane explains how the Bankruptcy Court can rely on a theory that has been rejected by the Ninth Circuit Bankruptcy Appellate Panel.

Second, Kane's argument that a Chapter 11 plan could not protect his post-petition wages from collection by the holders of non-discharged claims is equally flawed. It is well known in the industry that one of the few useful tools for Chapter 11 debtors to come out of BACPA was the ability to protect assets during the life of a Chapter 11 plan. (Appeal Brief, pp. 31-32.) Briefly, the automatic stay of Section 362 continues as to property so long as it is property of the estate, a discharge has not been granted or denied, and the estate has not closed. 11 U.S.C. §362(i). Section 1141(d)(5) provides that a discharge cannot be granted to an individual debtor until he has made all of the payments under the plan or met certain requirements. Finally, a Chapter 11 plan can include a provision that the assets of the estate do not vest in

---

[4] *See* Request to Supplement Record and for Judicial Notice, Exhibit A, pp.10-13 ("Summary Judgment Order").

APPELLANT'S REPLY BRIEF    PAGE 6

the debtor at confirmation, thereby keeping them as property of the estate and protected by the automatic stay.

Kane's Brief does not actually assert that he could not protect his wages in a Chapter 11 plan.  Rather, it states that confirmation "normally" vests all property in the estate, and that a debtor "typically" obtains a final decree to close a case shortly after a plan is confirmed. (Kane's Brief, p. 15.)  But a Chapter 11 debtor can choose to keep his wages in the estate during the plan and delay entry of a final decree, thereby keeping the protection of the automatic stay.

Finally, the Order asserts that Mr. Kane will be injured by a conversion to Chapter 11 because he will no longer be able to use his wages to pay attorneys to defend the multiple non-discharge complaints filed against him. (Order, p. 25.)  There is no evidence in the record that Mr. Kane would not be able to get a loan to fund such litigation.  One may equally speculate that the relatives who have been receiving generous stipends would be happy to fund such discharge defense if for no other reason than it would protect their future source of income. There is nothing in the Bankruptcy Code that prohibits a third-party from funding a debtor's litigation.

V. **ASSESSING THE FEASIBILITY OF AN AS-YET UNPROPOSED PLAN IS PREMATURE WHEN DECIDING IF A CASE SHOULD BE CONVERTED TO ONE UNDER CHAPTER 11.**

The remaining proposed impediments to confirmation described in the Order - such as the administrative costs and possible creditors objections - are purely speculative. While all Chapter 11 cases have administrative expense, there was no evidence presented to the Bankruptcy Court to show that such expense would exceed the millions of additional funds that a Chapter 11 would bring into the estate. Nor did any creditor file an objection to the motion. Finally, the alleged risk that the Chapter 11 case would be reconverted to Chapter 7 is disproved by the Bankruptcy Court's own finding.  The Order stated that Kane had not mismanaged his funds and that "were this case to be converted to Chapter 11, Debtor has shown he should…have the

opportunity to prosecute it himself." (Order, p. 24, ll. 20-23.)

In any case, weighing the feasibility of an as-yet unfiled plan is premature at this point. The court in *In re Baker*, 503 B.R. 751 (Bankr. M.D. Fla. 2013), held that considering feasibility at a conversion hearing is premature: "Instead of pre-determining the issue of feasibility at a conversion hearing… the Court should defer its findings on feasibility and the other requirements of §1129 until a confirmation hearing is properly noticed and scheduled." (*Baker*, p. 759.)

### VI. KANE'S DISMISSAL OF THE BANKRUPTCY COURT'S INSISTENCE THAT THE MOVING PARTIES ESTABLISH "CERTAINTY" IN THE CONFIRMATION OF A PLAN AND A "GUARANTEED" RECOVERY DOES NOT REFLECT THE IMPACT OF THE COURT'S RULING.

Kane's Brief does not dispute that the burden of proof in a Bankruptcy Court proceeding is by the preponderance of the evidence. As with the Bankruptcy Court's improper consideration of non-bankruptcy factors, Kane's Brief dismisses the Court's insistence of a higher burden of proof on the moving parties, asserting that the Court's comments were "misstated". (Kane's Brief, p. 20, l. 19.) The language of the Order speaks for itself. While the Court did not state specifically that it was imposing a heightened burden of proof, its commentary and description of the circumstances throughout the Order evidence that such a heightened burden was, in fact, being imposed. For that reason alone, the Order should be reversed and remanded.

### VII. THERE IS NO CONSTITUTIONAL ISSUE ON APPEAL.

Kane's Brief asserts that a Thirteenth Amendment issue would be fatal to the Conversion Motion. The issue is not before the Court on appeal but must be addressed here in light of Kane's comments. Several courts have fully considered and rejected the claim that converting an individual debtor's case from Chapter 7 to Chapter 11 under Section 706(b) is a violation of the Thirteenth Amendment. The court *In re Gordon* provides a detailed explanation of the issue, observing that a party

has no Constitutional right to discharge its debts, citing *United States v. Kras,* 409 US 434, 446 (1973) and noting that an individual can be put into an involuntary bankruptcy under Section 303. *In re Gordon, supra* 465 B.R. at pp. 694-702. Kane's suggestion that there may be a constitutional question is meritless.

## VIII. CONCLUSION

Mr. Kane's good faith and cooperation, as it is described in his brief, shows that he is able, and even likely, to complete a plan of reorganization under Chapter 11. His undisputed net wages, totaling between $4 and $7 million over the next five years, clearly are sufficient to fund a plan. Finally, as discussed above, the legal impediments identified by the Bankruptcy Court in its Order do not exist and will not prevent a successful plan. The Order's only remaining justification for denying the motion to convert Mr. Kane's case to one under chapter 11 is the court's speculation that an as-yet unproposed plan would not be feasible. Such speculation, however, is premature. *In re Baker, supra.* 503 B.R. at 759.

With the legal underpinnings of the Order removed, even the most generous standard of review of clear error requires that the Order be reversed and remanded for further consideration. Such consideration must exclude unsupported legal theories, as well as factors that do not relate to the Bankruptcy Code or its purposes, specifically the peculiarities of Mr. Kane's career, his desire to retain and pay for non-exempt assets, and to support his extended family.

Respectfully submitted,

Dated: October 7, 2021    BINDER & MALTER, LLP

By: /s/ *Wendy Watrous Smith*
Wendy Watrous Smith
Attorneys for South River Capital LLC

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because it contains 11,747 words, (inclusive of items allowed to be excluded from length under Fed. R. Bankr. P. 8015(g)).

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word, and using 14 point Times New Roman font.

Date:  October 7, 2021

                                                    /s/ *Wendy Watrous Smith*
                                                    Wendy Watrous Smith