1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

SOUTH RIVER CAPITAL, LLC,

Case No.  21-cv-03493-WHO

8

Plaintiff,

9

v.

**ORDER DENYING MOTION TO DISMISS**

10

EVANDER FRANK KANE,

Re: Dkt. No. 15

11

Defendant.

12          Evander Frank Kane, a professional hockey player who filed for bankruptcy last year,

13   moves to dismiss a pending appeal of the bankruptcy court's decision not to convert his Chapter 7

14   case to a Chapter 11 case.  Kane contends that because his long-term, multi-million dollar contract

15   with the San Jose Sharks was recently terminated, one of the appellants, South River Capital, LLC

16   ("South River"), can no longer rely on the contract in arguing that the case should be converted.[1]

17   Without the Sharks contract, Kane argues, this court cannot grant South River effective relief.

18          Kane's motion to dismiss is DENIED.  Before filing this motion, Kane signed a one-year

19   contract with another professional hockey team.  Although that contract is worth less than his

20   contract with the Sharks, it provides some effective relief that may be granted to South River.

21   This is enough for the appeal to proceed.

22                                    **BACKGROUND**

23          Kane filed for Chapter 7 bankruptcy on January 9, 2021, stating that he owned

24   $10,224,743.65 in property and owed $30,191,340 in liabilities.  Mot. to Dismiss ("MTD") [Dkt.

25   No. 15] 2:22-23; Order Denying Mot. to Convert ("Conversion Order") [Dkt. No. 1-1], Ex. A

26

27   [1] Kane makes the same motion in *Zions Bancorporation, N.A. v. Kane*, No. 21-CV-03765-WHO
(filed May 19, 2021), which involves a separate appeal of the same bankruptcy court decision by
28   another creditor.  There is significant overlap between the arguments raised in the two motions to
dismiss.  I deny the *Zions* motion for the same reasons articulated here.

United States District Court
Northern District of California

2:19-21.  At the time he filed for bankruptcy, Kane was in his third year of a seven-year contract with the San Jose Sharks.  *See* MTD at 3:24-26.

After Kane filed his Chapter 7 petition, one of his creditors, Zions Bancorporation N.A., moved to convert the case to a Chapter 11.  *See id*. at 2:19-21.  The crucial difference between a Chapter 7 case and a Chapter 11 case is that in Chapter 7, a debtor retains his post-petition income, while in Chapter 11, that income belongs to the bankruptcy estate.  *See* Conversion Order at 1:19-2:1.  At stake in Kane's case:  his earnings under the remainder of his contract with the Sharks, which the creditors estimated at $29 million.[2]  *See* MTD at 5:8-10.

South River joined the motion to convert.  *See id.* at 2:19-21.  The bankruptcy court denied the motion on April 19, 2021, which South River appealed.  *See* Dkt. No. 1.  The appeal takes several issues with the court's decision, including whether it applied the wrong legal standards and burdens of proof.  *See* Dkt. No. 4.  South River argued in part that the $29 million that Kane would purportedly earn through his Sharks contract meant:  (1) additional funds would be available to creditors in a Chapter 11 case, and (2) a confirmable plan could be proposed because "millions of dollars of unencumbered salary" was available to fund it.  *See id.* at 26-27, 32.

On or about January 8, 2022, while South River's appeal was pending, the Sharks terminated Kane's contract.[3]  MTD at 3:24-26.  He then signed a one-year contract with the Edmonton Oilers, under which South River alleges he will make appropriately $975,000.  Oppo.

---

[2] Kane disputes this number, saying it overlooks taxes, deductions, and other adjustments, and that his salary depended on the number of hockey games he played.  *See* MTD at 5:8-6:12.

[3] Both Kane and South River filed requests for judicial notice.  *See* Dkt. Nos. 16, 18, 21.  I will take notice of two of the exhibits:  the San Jose Sharks statement that it intended to terminate Kane's contract (Dkt. No. 16, Ex. 1) and the Edmonton Oilers statement that it signed Kane to a one-year contract (Dkt. No. 21, Ex. 3).  These facts can be accurately and readily determined from sources (the team websites) whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b)(2).  The biographies of the three reporters are not relevant to the issues at hand.  *See* Dkt. No. 21, Exs. 1, 2, 4.  Notice of the news articles is inappropriate because the parties effectively proffer them for the truth of their content (i.e., the amount of money Kane will lose on his Sharks contract and the amount he will earn from the Oilers), not for what was in the public realm at the time.  *See* Dkt. No. 16, Ex. 2; Dkt. No. 18, Ex. A; *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.").  Moreover, those facts are subject to reasonable dispute, as evidenced by the arguments on this motion.  *See* Fed. R. Evid. 201(b).

United States District Court
Northern District of California

1    [Dkt. No. 17] 2:28-3:3; Reply [Dkt. No. 20] 3:25-26.

2        Kane filed this motion to dismiss on February 22, 2022.  Dkt. No. 15.  Pursuant to Civil

3    Local Rule 7-1(b), I deemed it appropriate for resolution without oral argument.

4                                      **LEGAL STANDARD**

5        "The test for mootness of an appeal is whether the appellate court can give the appellant

6    any effective relief in the event that it decides the matter on the merits in his favor.  If it can grant

7    such relief, the matter is not moot."  *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citing

8    *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986)); *see also In re Pattullo*, 271 F.3d 898, 901

9    (9th Cir. 2001) ("If an event occurs while a case is pending on appeal that makes it impossible for

10   the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must

11   be dismissed.") (citations omitted).  "[W]hile a court may not be able to return the parties to the

12   status quo ante, an appeal is not moot if the court can fashion *some* form of meaningful relief."  *In*

13   *re Pattullo*, 271 F.3d at 901 (citations omitted) (emphasis in original).  The party asserting

14   mootness has the "heavy burden" of showing there is no effective relief for the court to provide.

15   *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) (citation omitted).

16                                       **DISCUSSION**

17       Kane argues that it is not possible to grant effective relief to South River because his

18   Sharks contract has been terminated and thus, cannot be used to fund a Chapter 11 plan.  MTD at

19   7:1-2.  According to Kane, this means there is "no basis to reconsider the Conversion Order

20   because the underlying contract is gone."  *Id.* at 7:7-8.  He also describes his future career

21   prospects as "uncertain," asserting that there is "no way of knowing whether Kane will be able to

22   get another NHL contract at the same salary as he had with the Sharks, or at all."[4]  *See id.* at 7:3-6.

23       South River's response is straightforward:  Although Kane's one-year contract with the

24   Oilers is "less lucrative" than his contract with the Sharks, $900,000-plus is "still enough

25   _____

26   [4] Kane did not disclose his contract with the Oilers in his motion to dismiss.  *See generally* MTD.
     For the first time in his reply, Kane argues that the Oilers contract does not provide a basis upon
27   which to convert his case to Chapter 11, as his $93,214 in monthly expenses (resulting in annual
     expenses of approximately $1.1 million) exceeds $975,000.  Reply at 4:4-12.  However,
28   "arguments raised for the first time in a reply brief are waived."  *Turtle Island Restoration Network
     v. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012).

                                              3

1  disposable income to fund a Chapter 11 plan." Oppo. at 4:16-18. South River argues that its

2  appeal did not depend on the Sharks contract, but instead "the simple argument that a bankruptcy

3  debtor making millions—or now hundreds of thousands—should be obligated to contribute his or

4  her disposable income to pay creditors through a Chapter 11 plan." *Id*. at 3:9-14.

5  The question before me is whether I can grant South River *any* effective relief. The Ninth

6  Circuit has made clear that an appeal is not moot if "*some* form of meaningful relief" exists. *In re*

7  *Pattullo*, 271 F.3d at 901 (emphasis in original); *see also In re Burrell*, 415 F.3d at 998 ("The test

8  for mootness of an appeal is whether the appellate court can give the appellant *any* effective relief

9  . . .") (emphasis added). There is an obvious difference between Kane's former and current

10  contracts that would result in less money available to South River and the other creditors should

11  the appeal be granted and the case ultimately be converted to Chapter 11. But there is still some

12  form of effective relief available: a portion of the $975,000 that South River alleges that Kane

13  will earn. Moreover, had the case been converted to Chapter 11 and then Kane had lost his

14  contract with the Sharks, his contract with the Oilers would have required modification of a

15  Chapter 11 plan—yet still would have offered the creditors relief. *See In re Thorpe Insulation*

16  *Co.*, 677 F.3d 869, 880 (9th Cir. 2012) (holding that an appeal was not moot because modification

17  would still offer the appellants relief).

18  The case that Kane relies on is distinguishable. *See* Reply at 2:19-3:5. The Northern

19  District of Texas dismissed as moot an appeal of a denial of a Chapter 11 reorganization plan in

20  part because the plan relied upon a property that the debtor no longer owned because of

21  foreclosure. *Mariah Bay Leasing Corp. v. Credit Union Liquidity Servs., Inc.*, No. 11-CV-029,

22  2011 WL 2586761, at *4 (N.D. Tex. June 29, 2011). But there was a permanence in *Mariah Bay*

23  that is not present in the case at hand. The *Mariah Bay* court noted that the debtor had agreed to

24  the order that authorized the foreclosure, allowing the foreclosure to take place and "ending any

25  possible claim it has to ownership" of the property. *Id*. Therefore, the court held, there was "no

26  basis to reverse the effect" of the order. *Id*. By contrast, Kane asserts that the National Hockey

27  League Players' Association "intends to pursue a grievance" on his behalf following the Sharks'

28  termination of his contract. MTD at 3:26-28. The outcome of that process may impact the

United States District Court
Northern District of California

4

1   amount of money available to Kane and thus, available to his creditors in a Chapter 11 plan.

2   The Ninth Circuit has set a high bar for dismissing an appeal as moot, as evidenced by the

3   language of the relevant cases (i.e., that an event must make it "*impossible* for the court to grant

4   *any* effectual relief whatever") and the heavy burden the party asserting mootness must meet in

5   establishing this.  *In re Pattullo*, 271 F.3d at 901 (emphasis added); *Suter*, 504 F.3d at 986.  Kane

6   has not met this bar.  At most, he has shown that there is less post-petition income that would be

7   available to creditors in a Chapter 11 plan.  But he has not met his burden of showing that it would

8   be impossible for me to grant *any* effective relief.  Accordingly, his motion to dismiss is DENIED.

9   <center>**CONCLUSION**</center>

10  For the reasons stated above, Kane's motion to dismiss is DENIED.

11  **IT IS SO ORDERED.**

12  Dated: April 5, 2022

13

14

15  William H. Orrick
    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28